Mr. Thomas F. Barry, Jr. Secretary Florida Department of Transportation 605 Suwannee Street Tallahassee, Florida 32399-0450
Dear Secretary Barry:
You ask the following question:
May the Florida Ports Financing Commission use interest earned on funds provided by the State of Florida for the Florida Seaport Transportation and Economic Development Program for operating expenses of the commission?
In sum:
In the absence of statutory direction, interest earned on Florida Seaport Transportation and Economic Development Program revenues may be expended only for the same purposes that the program revenues may be used.
Section 311.07(1), Florida Statutes, created the Florida Seaport Transportation and Economic Development Program (FSTED) within the Department of Transportation (DOT) "to finance port transportation or port facilities projects that will improve the movement and intermodal transportation of cargo or passengers in commerce and trade and that will support the interests, purposes, and requirements of ports located in this state." The Florida Seaport Transportation and Economic Development Council (TEDC) was created by section 311.09, Florida Statutes, within DOT to evaluate, review and approve or disapprove each project eligible to be funded pursuant to FSTED. Subsection (12) of section 311.09
provides that the council may employ an administrative staff, the cost for such administrative services to be shared by all ports that receive funding from the FSTED program.[1]
Section 311.07(2), Florida Statutes, provides that a minimum of $8 million per year shall be made available from the State Transportation Trust Fund to fund the FSTED program. The FSTED program moneys are to be used to fund approved projects on a 50-50 matching basis with deepwater ports.[2] Section 311.07(3)(b), Florida Statutes, prescribes the types of projects that are eligible for funding by grants under the program.[3] In addition, program funds may be used to develop, with the Florida Trade Data Center, trade data information products that will assist Florida's seaports and international trade.[4]
In addition to the funding provided in section 311.07, Florida Statutes, section 320.20(3), Florida Statutes, provides that beginning on July 1, 1996, and annually thereafter, $15 million from motor vehicle registration receipts will be deposited in the State Transportation Fund for the purpose of funding the FSTED program. Such revenues are to be distributed on a 50-50 matching basis to any port listed in section 311.09(1), Florida Statutes,[5] to be used for funding projects as described in section 311.07(3)(b), Florida Statutes.[6] The revenues
"may be assigned, pledged, or set aside as a trust for the payment of principal or interest on bonds, tax anticipation certificates, or any other form of indebtedness issued by an individual port or appropriate local government having jurisdiction thereof, or collectively by interlocal agreement among any of the ports, or used to purchase credit support to permit such borrowings."[7]
This office has been advised that pursuant to subsection (3), this annual appropriation has been pledged as a trust for the payment of principal or interest on the Series 1996 Revenue Bonds issued by the Florida Ports Financing Commission (FPFC). The FPFC was established by interlocal agreement pursuant to Chapter 163, Florida Statutes, as a cost effective means of financing various capital projects for Florida ports by issuing bonds and transferring the proceeds to the individual ports.
Section 320.20(4), Florida Statutes, provides that beginning on July 1, 1999, and annually thereafter, $10 million shall be deposited in the State Transportation Trust Fund solely for the purposes of funding the FSTED program and for funding seaport intermodal access projects of statewide significance as provided in section 341.053, Florida Statutes. Like section 320.20(3), subsection (4) provides that the funds may be pledged, set aside as a trust for the payment of principal or interest on bonds or any other form of indebtedness, or used to purchase credit support to permit such borrowings. This office has been advised that the $10 million annual appropriation has been pledged as trust for the payment of principal and interest on the Series 1999 revenue bonds issued by the FPFC. The FPFC has contracted with a bond trustee to disburse the proceeds of the bonds to the individual ports for reimbursement of their appropriate share of expenditures on eligible projects.
You state that in the course of administering the financing for the projects, the funds appropriated by section 320.20, Florida Statutes, are transferred by DOT to an escrow account on behalf of the bond trustee. The bond trustee is authorized to draw funds from the escrow account up to sixty days prior to the required date for debt service payment. By drawing an amount from the escrow account and investing the funds for up to sixty days, the bond trustee can collect interest earnings on the funds for this time period.
In his report on the FSTED program, the Auditor General raised a question as to the use of the interest earnings collected. The FPFC had been using the interest to pay its operating expenses.
Reference is made in the materials supplied to this office regarding a Master Agreement and the Bond Indenture. This office has no authority to construe the provisions of these documents. The question you have asked, however, appears primarily to be a matter of construction and application of general legal principles. I therefore offer the following observations.
This office has stated on numerous occasions that in the absence of a statute directing how the interest it to be used, interest earned on invested funds generally follows the principal. For example, this office stated in Attorney General Opinion 77-26 that interest earned on the investment of the proceeds of a revenue bond issue deposited in a construction trust fund established by resolution of a district school board may not be lawfully used by the school board to meet a deficit in its operating budget. Instead, the proceeds of such revenue bond issue and any interest earned on such proceeds could only be used for the projects and purposes defined and designated in the enabling statute and enabling resolution. Any diversion of moneys deposited in such trust fund, or the accrued interest, to any purpose other than those prescribed in the enabling legislation and bond enabling resolution, or in the bonds or certificates issued and sold thereunder, was invalid.
Similarly, in Attorney General Opinion 92-13, this office concluded that interest accumulating on taxes deposited in a bank prior to distribution follows the taxes. Again in Attorney General Opinion 94-39 this office stated that interest accumulated on invested impact fees may be used to replace fees not collected due to waivers or deferrals for low income housing, as long as such interest was used for the purpose for which the specific fund was created.[8]
Chapter 311, Florida Statutes, authorizes revenues to be used for the projects specified therein, and section 320.20(3) and (4), Florida Statutes, states that program funds may be pledged for payment of principal or interest on bonds, or used to purchase credit support to permit such borrowings. However, nothing in the statutes provides for FSTED program funds, or the interest earned on such funds, to be used to pay the operating expenses of FPFC or DOT.
Accordingly, I am of the opinion that in the absence of statutory direction, the interest earned on Florida Seaport Transportation and Economic Development Program revenues may be expended only for the same purposes that the program revenues may be used, i.e., to fund eligible projects established by the program, to pay the principal or interest on bonds issued for such projects, or to purchase credit support to permit such borrowings.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 311.09(12), Fla. Stat., states that the cost for such administrative services paid by the ports shall be based upon a pro rata formula measured by each recipient's share of the funds as compared to the total funds disbursed to all recipients during the year. The share of costs for administrative services shall be paid in its total amount by the recipient port upon execution by the port and the Department of Transportation of a joint participation agreement for each council-approved project, and such payment is in addition to the matching funds required to be paid by the recipient port.
[2] Section 311.07(3)(a), Fla. Stat. The statute refers to deepwater ports which are governed by a public body and comply with the water quality provisions of s. 403.061, Fla. Stat., the comprehensive master plan requirements of s. 163.3178(2)(k), Fla. Stat., the local financial management and reporting provisions of Part III of Ch. 218, Fla. Stat., and the auditing provisions of s.11.45(3)(a)4, Fla. Stat.
[3] See, s. 311.07(3)(b), Fla. Stat., stating that the following types of projects are eligible for funding by grants under the program:
"1. Transportation facilities within the jurisdiction of the port.
2. The dredging or deepening of channels, turning basins, or harbors.
3. The construction or rehabilitation of wharves, docks, structures, jetties, piers, storage facilities, cruise terminals, automated people mover systems, or any facilities necessary or useful in connection with any of the foregoing.
4. The acquisition of container cranes or other mechanized equipment used in the movement of cargo or passengers in international commerce.
5. The acquisition of land to be used for port purposes.
6. The acquisition, improvement, enlargement, or extension of existing port facilities.
7. Environmental protection projects which are necessary because of requirements imposed by a state agency as a condition of a permit or other form of state approval; which are necessary for environmental mitigation required as a condition of a state, federal, or local environmental permit; which are necessary for the acquisition of spoil disposal sites and improvements to existing and future spoil sites; or which result from the funding of eligible projects listed herein.
8. Transportation facilities as defined in s. 334.03(31) which are not otherwise part of the Department of Transportation's adopted work program.
9. Seaport intermodal access projects identified in the 5-year Florida Seaport Mission Plan as provided in s. 311.09(3)."
[4] Section 311.07(3)(a), Fla. Stat.
[5] Section 311.09(1), Fla. Stat., refers to the ports of Jacksonville, Port Canaveral, Fort Pierce, Palm Beach, Port Everglades, Miami, Port Manatee, St. Petersburg, Tampa, Port St. Joe, Panama City, Pensacola, Key West, and Fernandina.
[6] See, n. 2, supra.
[7] Section 320.20(3), Fla. Stat
[8] And see, Op. Att'y Gen. Fla. 88-01 (1988) (interest earned on funds generated by a tax levy pursuant to s. 236.25(2), Fla. Stat., as amended by s. 4, Ch. 87-284, Laws of Florida, must be applied to the purposes for which the tax was levied); 85 C.J.S.Taxation s. 1064 (except insofar as the Legislature changes the rule, interest, penalties, and cost collected on delinquent taxes follow the tax and the apportionment thereof). Cf., Ops. Att'y Gen. Fla. 75-241 and 75-241A (1975) (boards of county commissioners are authorized by s. 125.31, Fla. Stat., to invest surplus public funds and, in the absence of any statutory directive as to how the interest on such investments is to be credited or deposited, the income from this investment should be credited to or deposited back to the fund from which the surplus funds were taken for investment).